IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WILLIAM DARLINGTON SARRIA,

     Petitioner,

v.                                  No. 2:26-cv-00835-KG-KK

TODD LYONS, et al.,

     Respondents.

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the Court on William Darlington Sarria's Petition for a Writ of Habeas Corpus, Doc. 1, the Government's Response, Doc. 8.  For the reasons below, the Court grants the petition and orders a bond hearing.

*I.*    *Background*

Mr. Sarria, a native and citizen of Cuba, presented at a port of entry in October 2024 under the CBP One program.  Doc. 8 at 1–2.  The Department of Homeland Security ("DHS") inspected him and granted him temporary parole into the United States until April 18, 2025. Doc. 8 at 2; Doc. 1 at 9..  DHS also served Petitioner with a Notice to Appear ("NTA"), charging him as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and initiating removal proceedings under 8 U.S.C. § 1229a.  *Id.*  On September 3, 2025, DHS moved to dismiss Petitioner's NTA and allow it to pursue expedited removal against Petitioner.  *Id.*  An immigration judge ("IJ") granted DHS's motion and Petitioner was taken into immigration custody in September 2025. *Id.*; Doc. 8-1.  Petitioner appealed that decision, Doc. 8-4, and is currently detained at the Otero County Processing Center in New Mexico.  Doc. 1 at 1.  Petitioner received a bond hearing on March 11, 2026.  *See* Doc. 1 at 6.  The IJ denied bond after determining Petitioner is a "flight risk."  *Id.*  Petitioner reserved his right to appeal the IJ's decision.  *Id.*

Petitioner now challenges his continued detention without a meaningful opportunity to seek release. *See* Doc. 1. He argues that his continued detention has "become unreasonably prolonged without meaningful review." Doc. 1 at 3. He also argues that he has not been provided "meaningful bond review" because he has not received "an individualized custody hearing placing the burden on the Government." *Id.* He seeks a writ of habeas corpus that either orders his immediate release or an "individualized bond hearing before a neutral decision-maker." *Id.*

The Government opposes the petition. *See* Doc. 8. They argue that, because Petitioner was paroled into the United States under § 1182(d)(5)(A), the revocation of his parole returned him to the status he held before: an applicant for admission at the border. *Id.* at 2. According to the Government, Petitioner remains subject to detention under 8 U.S.C. § 1225, which does not provide for a bond hearing. *Id*.

## II.    *Legal Standard*

Federal courts have jurisdiction to review habeas petitions filed by noncitizen detainees alleging "custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The Fifth Amendment's Due Process Clause prohibits the Government from depriving any person of liberty without due process of law. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

The Immigration and Nationality Act ("INA") and its implementing regulations outline the appropriate procedures for the detention and removal of noncitizens without legal status in the United States. "Noncitizens who arrive at a port of entry without a visa or other entry

documents...are deemed inadmissible under 8 U.S.C. § 1182(a)(7)." *Mendibaev v. Lyons*, 2026 WL 917457, at *3 (D.N.M.) (internal quotation marks and citation omitted).  Once a noncitizen is deemed inadmissible, "the immigration officer must order the noncitizen's removal unless the noncitizen indicates an intention to apply for asylum or fear of persecution." *Id.* (citing § 1225(b)(1)(A)(i)).  The Government may place the noncitizen into expedited removal proceedings, *see* § 1225(b)(1), or place the noncitizen into regular removal proceedings under § 1229(a).  *See id.*

Two provisions of the INA govern the detention of noncitizens pending removal proceedings.  *See Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018).  First, § 1225 governs noncitizens detained at a port of entry or shortly after entry, who are treated as "[noncitizens] seeking admission into the country." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020).  Absent exceptions irrelevant here, § 1225 "mandates detention and affords no bond hearing." *Pu Sacvin v. De Anda-Ybarra*, 2025 WL 3187432, at *1 (D.N.M.).

By contrast, § 1226(a) sets forth "the default rule" for detaining noncitizens "already in the country." *Jennings*, 583 U.S. at 303.  Section 1226(a) authorizes the arrest and detention of noncitizens, "on a warrant issued by the Attorney General...pending a decision on whether [they are] to be removed."  Under federal regulations, a noncitizen detained under § 1226(a) is entitled to an individualized bond hearing at the "outset of detention." *Jennings*, 583 U.S. at 306.

Immigration parole is a narrow exception to the otherwise mandatory detention of noncitizens under § 1225(b)(1).  Under § 1182(d)(5)(A), a noncitizen applicant for admission who is ordinarily subject to mandatory detention under § 1225(b)(1) may be paroled into the United States pending the resolution of their immigration proceeding.  The discretionary decision to grant parole rests with the Secretary of Homeland Security, who may parole noncitizens to

serve "urgent humanitarian reasons or significant public benefit."  § 1182(d)(5)(A).  "[W]hen the purposes of such parole [], in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  *Id.*  Immigration parole terminates automatically if the parolee departs the United States or the authorized parole period expires.  8 C.F.R. § 212.5(e)(1).  Otherwise, termination of parole requires written notice.  § 212.5(e)(2).

### III.    *Analysis*

For the reasons below, the Court concludes that (A) Petitioner is subject to detention under § 1225(b), but (B) the Due Process Clause applies to Petitioner and entitles him to a bond hearing, which he has already received.

### A.    *Petitioner is subject to detention under § 1225(b).*

As an initial matter, Petitioner's redetention was lawful under the INA because his parole expired on April 18, 2025.  Doc. 1 at 9.  Under § 212.5(e)(1), parole terminates automatically upon expiration of the authorized period, and no written notice is required.  Here, Petitioner's parole terminated in April 2025, and he was arrested in September 2025.  Doc. 8 at 2.  Noncitizens who have not "effected an entry" have "only those rights regarding admission that Congress has provided by statute."  *Thuraissigiam*, 591 U.S. at 140.  Therefore, under the INA, Petitioner was not entitled to additional procedural safeguards before his arrest.

Next, Petitioner is subject to detention under § 1225(b).  Parole does not constitute an admission into the United States—a parolee remains an applicant for admission even after parole is terminated or revoked.  *See* § 1182(d)(5)(A); 8 C.F.R. § 1.2.  So, "[a]n alien detained under [§ 1225(b)] who is released from detention pursuant to a grant of parole under [§ 1182(d)(5)(A)],

4

and whose grant of parole is subsequently terminated, is returned to custody under [§ 1225(b)] pending the completion of removal proceedings." *Rincon v. Hyde*, 810 F. Supp. 3d 101, 109 (D. Mass. 2025) (quoting *Matter of Q. Li*, 29 I. & N. Dec. 66, 70 (BIA 2025)). In 2024, Petitioner arrived at a port of entry, presented for admission, and was detained under § 1225(b) before he was granted parole. Doc. 8 at 2. Therefore, when his parole expired, Petitioner reverted to his status as an applicant for admission, subject to detention under § 1225(b).

### B.      The Due Process Clause applies.

Under the INA, Petitioner is subject to detention under § 1225(b)—but that is not the end of the Court's inquiry. In addition to his statutory claim, Petitioner asserts that his continued detention violates the Due Process Clause because it is "absent such procedural protection" like a bond hearing. Doc. 1 at 3. The Court agrees.

Courts analyze due process claims in two steps. First, they evaluate whether a protected liberty interest exists, and second, whether the procedures used to deprive that interest satisfy due process. *Domingo v. Castro*, 2025 WL 2941217, at *3 (D.N.M.) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). The Court addresses each in turn.

#### 1.      Petitioner has a cognizable liberty interest because he has lived here for years.

It is well-settled that the Due Process Clause grants protection to "all persons within the territory of the United States." *Wong Wing v. United States*, 163 U.S. 228, 238 (1896). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Protection under the Due Process Clause extends to noncitizens "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. The Supreme Court has recognized that a noncitizen physically present in the United States may acquire a cognizable

liberty interest through "substantial connections" here. *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) ("[A]liens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country"); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (holding that noncitizens have a "weighty" interest in their right "to stay and live and work in this land of freedom" and to "rejoin...immediate family").

Under these principles, Petitioner has established a protectable liberty interest through his years residing in the United States. That interest became stronger as he maintained stable employment and developed community ties. Doc. 1 at 11–15. His detention has severed those ties and deprived him of the core liberty interest the Due Process Clause protects: freedom from "unlawful or arbitrary physical restraint or detention." *See Zadvydas*, 533 U.S. at 718 (Kennedy, J., dissenting).

The Government argues that Petitioner has no entitlement to any legal protections, constitutional or otherwise, other than those prescribed by Congress. Doc. 8 at 4. It relies on *Thuraissigiam*, 591 U.S. at 139, *see id.*, but that reliance is misplaced. In *Thuraissigiam*, a noncitizen who was apprehended 25 yards inside the United States challenged his expedited removal and denial of asylum on due process grounds. *Id.* at 114–15. The Supreme Court rejected his claims, applying the "entry fiction" doctrine, under which certain noncitizens physically present in the United States are treated, for due process purposes, as if stopped at the border. *Id.* at 139–40. The Supreme Court declined to grant constitutional significance to the 25 yards at issue. *Id.* ("[A]n alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry.'"). Rather, it concluded that "an alien in [the noncitizen's] position has only those rights regarding admission that Congress has provided by statute." *Id.* at 138; *see also*

*Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 213 (1953) (holding that a noncitizen detained on Ellis Island remained an "entering alien" and that "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned"). Applied here, *Thuraissigiam* makes clear that Petitioner's due process rights *regarding his admission into the country* are limited to those authorized by Congress.

But Petitioner's case differs from *Thuraissigiam* in two ways that limit its applicability to his due process claim.  First, unlike the petitioner in *Thuraissigiam*, Petitioner does not challenge an admission determination.  The petitioner there sought vacatur of his removal order and a new opportunity to apply for asylum—relief implicating Congress's "sovereign prerogative" to decide which noncitizens to admit.  *Id.* at 140.  The Court rejected that claim in part because the requested relief intruded on Congress's plenary authority over the admission of noncitizens into the United States.  *Id.*

Here, by contrast, Petitioner challenges the constitutionality of his detention, a question squarely within this Court's habeas power.  *See Zadvydas*, 533 U.S. at 687 (recognizing jurisdiction over habeas petitions alleging custody "in violation of the Constitution or laws...of the United States" (quoting 28 U.S.C. § 2241(c)(3))).  *Thuraissigiam* itself reaffirmed that habeas "is the appropriate remedy to ascertain...whether any person is rightfully in confinement or not."  591 U.S. at 117 (citation and internal quotation marks omitted).  Thus, the relief Petitioner seeks is parallel to, rather than in conflict with, Congress's plenary authority over admission.  *See Rincon*, 810 F. Supp. 3d at 113.

Second, Petitioner's circumstances differ from those in *Thuraissigiam* because he has resided in the United States for years.  The petitioner in *Thuraissigiam* made it 25 yards into the country—"the functional equivalent of a cartographic rounding error," to which the Supreme

7

Court declined to assign constitutional significance.  *Rincon*, 810 F. Supp. 3d at 111.  Applying the entry fiction to Petitioner's circumstances would "require[] a much greater sleight of hand." *Id.* at 112.  While Congress, under its sovereign prerogative, may define or limit statutory rights collateral to admission, it may not extinguish protections that arise from the Constitution.  *Id.* Indeed, *Thuraissigiam* itself described the entry fiction as applying to noncitizens "who have never been naturalized, *nor acquired any domicil [sic] or residence within the United States*, nor even been admitted into the country pursuant to law."  591 U.S. at 138 (emphasis added). Petitioner does not fall into that group because he *has* resided here—and his ties afford him rights that the entry fiction cannot erase.

Moreover, adopting the Government's rule—that noncitizens released into the country on parole have no due process rights—would "create a perverse incentive to enter at an unlawful rather than a lawful location."  *Id.* at 140 (citation omitted).  Courts in this district have recognized that noncitizens who entered without inspection may, through years of residence, acquire liberty interests protected by due process.  *See, e.g.*, *Kumar v. Blanche*, 2026 WL 1006267, at *1 (D.N.M.) (Gonzales, J.); *Ramirez v. Noem*, 2026 WL 381869, at *6 (D.N.M.) (Davenport, J.); *Lopez-Romero v. Lyons*, 2026 WL 92873, at *6 (D.N.M.) (Strickland, J.).  Under the Government's position, Petitioner—who presented himself at a port of entry and complied with inspection procedures—would have weaker constitutional protections than someone who evaded detection.  Fundamental fairness counsels against such a result.

### 2.    *Under the Due Process Clause, a bond hearing is warranted.*

Because the Due Process Clause affords Petitioner a liberty interest, the Court next determines what process is due.  In the immigration context, courts often apply the framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *See, e.g.*, *Landon*, 459 U.S. at 34;

*Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020); *Hernandez v. Cremer*, 913 F.2d 230, 238 (5th Cir. 1990).  Under *Mathews*, the Court balances (1) "the private interest" affected; (2) "the risk of erroneous deprivation" through the procedures used and the probable value of additional safeguards; and (3) "the Government's interest," including the fiscal and administrative burdens of additional procedures.  424 U.S. at 335.

Turning to the first *Mathews* factor, the Court finds that Petitioner has a significant private interest in remaining free from detention after living outside of physical custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects."  *Zadvydas*, 533 U.S. at 690.  As mentioned above, Petitioner was free from physical custody for more than a year before he was redetained, and his interest in his liberty grew stronger as he worked and lived within his community.  His private interest in freedom from arbitrary or unlawful physical custody is substantial.

The second *Mathews* factor goes against Petitioner.  While the risk of erroneous deprivation is high, Petitioner has already had an individualized bond hearing before an IJ on March 11, 2026, where the IJ denied Petitioner's bond request after determining Petitioner is a flight risk.  *See* Doc. 1 at 6.  Because Petitioner received individualized process through his bond hearing, this factor weighs against Petitioner.

Finally, the third *Mathews* factor weighs against Petitioner.  While the Government has a strong interest in enforcing its immigration laws, its interest in detaining noncitizens absent an individualized justification for doing so is low.  *Id.*  However, the Government undertook the "administrative burden[]" of providing Petitioner a bond hearing.  *Mathews*, 424 U.S. at 335. Because the bond hearing did not interfere with Petitioner's removal proceedings, it did not

9

improperly interfere with the Government's "sovereign prerogative...to decide which

[noncitizens] to admit." *Landon*, 459 U.S. at 32.  On balance, two of the three *Mathews* factors

weigh against Petitioner, and the Court finds that he has received adequate due process.

## IV.   *Conclusion*

For the reasons above, the Petition for Writ of Habeas Corpus, Doc. 1, is denied.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.